Dr. Carmelo J. Colón, demandante y apelante, *v.* Julio Feliciano et al., demandados y apelados.

Núm. 8109.—*Sometido:* Enero 29, 1940. *Resuelto:* Marzo 5, 1940.

*L. Mercader,* abogado del apelante; *E. Pérez Casalduc,* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Los apelados solicitan la desestimación del recurso interpuesto en este caso por frívolo. El apelante se opuso por escrito y oralmente. Su alegato, en el que se señalan siete errores todos ellos en relación con la apreciación de la prueba, había sido ya presentado.

Tres demandas figuran en la transcripción. En la primera, radicada en febrero 10, 1938, se alega que los demandados Julio Feliciano y Josefa Jiménez Nieves eran dueños de dos fincas urbanas en Arecibo, cuyas fincas vendió el primero con el asentimiento de la segunda al demandante quedando de otorgarse el contrato en febrero 9, 1938, y negándose luego Feliciano a otorgarlo al requerírsele para ello. Fué contestada por medio de una negativa general y específica de todos sus hechos.

Poco después se radicó la segunda agregándose como demandados a Bonifacia Feliciano y a Rodolfo Bravo y su esposa. Se insiste en la venta de las dos fincas hecha por Julio Feliciano y Josefa Jiménez y se alega que Julio Feliciano "nominal y convencionalmente tenía la finca A a nombre de sus dichas madre y hermana", las demandadas Josefa Jiménez y Bonifacia Feliciano. También que en febrero 10, 1938, Julio Feliciano y Josefa Jiménez vendieron al otro demandado Bravo la finca A, y de la B una faja de un metro de frente por catorce de fondo, otorgando la escritura con

Bonifacia Feliciano el mismo día. Además que el 8 y el 9 de febrero, 1938, cuando el demandante "discutía y efectuaba el contrato de compraventa con Julio Feliciano, quien a su vez actuaba . . . como apoderado de sus referidas madre y hermana, el otro demandado Rodolfo Bravo se encontraba presente." Bravo y su esposa contestaron finalmente negando que J. Feliciano fuera dueño y que Josefa Jiménez vendiera, y alegando que J. Feliciano carecía de poder legal para vender. Alegaron varias defensas especiales y contrademandaron reclamando daños y perjuicios al demandante por sus falsas y maliciosas imputaciones. A moción del demandante la contrademanda fué eliminada sin perjuicio de que los contrademandantes pudieran entablar su reclamación por medio de acción separada.

La tercera demanda enmendada se presentó para conformar las alegaciones de la segunda a la prueba. Se insiste en la venta de las fincas A y B por Julio Feliciano y la señora Jiménez al demandante con obligación de otorgarle la escritura; en el título convencional de Bonifacia Feliciano; en la negativa a otorgar el documento, agregándose que se debió al hecho de haberse negado el demandante a aumentarle doscientos dólares a Julio Feliciano por encima del precio convenido, y en la venta a Bravo conociendo éste el convenio existente entre los vendedores y el demandante, agregándose que para completar el precio de siete mil quinientos dólares de la compra tuvo que recurrir el demandante al Banco de Ponce tomándole a préstamo por teléfono cuatro mil.

Fué el pleito a juicio, y apreciando las alegaciones y las pruebas, la corte lo resolvió por sentencia de marzo 6, 1939, declarando la demanda sin lugar, sin especial condenación de costas. Expuso los fundamentos que tuvo para ello, como sigue: ·

"Alegando la existencia de un contrato verbal, el demandante interesa que Julio Feliciano y Josefa Jiménez le otorguen escritura, respectivamente, de las fincas A y B que se describen en la demanda.

También pretende que se declare ineficaz una venta a favor de Rodolfo Bravo, referente a las mismas fincas.

"En acciones sobre otorgamiento de escritura, hay que demostrar un contrato perfeccionado. La ausencia de un requisito esencial no puede suplirla el tribunal por motivos de equidad.

"El demandante debe probar que el objeto del contrato pertenecía a la persona que se hubiese obligado a venderle. La situación que presenta la prueba del actor es tan deficiente y confusa, que el demandante tuvo que enmendar dos veces su demanda, alegando hechos distintos en las tres alegaciones. Esas diferencias no sólo comprenden la forma de transacción y el carácter del supuesto contrato, sino que abarcan la descripción del objeto, que fué materia de dicho convenio.

"Aceptando en lo esencial la declaración del demandante y algunos puntos del resto de su prueba, hay que admitir que el demandado Julio Feliciano convino de palabra con Carmelo Colón en que vendería las dos fincas cuyo título interesa. Si admitimos, también, la entrevista del demandante con la madre de Feliciano, quedaría probado que hizo gestiones cerca de Josefa Jiménez y que hubo alguna disposición de ésta para vender el derecho que a ella correspondía, ya sea en una casa, como dice Colón, o en ambas fincas; pero no ha probado que Josefa Jiménez llegara a perfeccionar un contrato sobre precio cierto y materia específica, ni podía Julio Feliciano vender la finca A, pues su hermana tenía un condominio en la misma. Es tan clara dicha pertenencia y el origen del título, según consta de los documentos presentados, que juzgamos incierto lo alegado en el hecho primero de la demanda, de que Julio fuera el único dueño de la finca A, y la alegación vaga, del hecho tercero, de que el título estuviese a favor de la hermana, por algún acto convencional.

"Tampoco hay evidencia que demuestre un contrato entre Bonifacia Feliciano y Carmelo Colón, ni se ha probado que Julio Feliciano tuviese un poder de carácter expreso, como se requiere en derecho, para que el hijo pudiese obligar a la madre y hermana en la venta de bienes inmuebles.

"De la declaración de Bonifacia Feliciano se desprende que su hermano administraba de hecho las propiedades de la madre y hermana y que hacía gestiones sobre negocios referentes a las fincas, tomándose aquellas facultades que generalmente se toman los hijos mayores, cuando las mujeres carecen de disposición para desenvolverse. Pero esto no implica que cualquier contrato para vender bienes inmuebles de ellas, no tuviera que convenirse o ratificarse de

manera formal con la madre y la hermana, dada la disposición mandatoria del artículo 1604 del Código Civil y la interpretación restrictiva de la jurisprudencia de Puerto Rico con respecto al contrato de mandato.

"Es censurable la conducta de Julio Feliciano llegando a entendidos con el Dr. Colón como si el negocio de las fincas estuviese en sus manos, para después aconsejar a la madre y hermana que vendiesen a un tercero; pero el demandante sabe que estas cosas ocurren, a menudo, cuando se actúa sobre bases inseguras."

Hemos examinado la evidencia y las alegaciones y a nuestro juicio no puede llegarse a otra conclusión. El juzgador penetró bien en la actuación de las partes, calificando como se merecía la conducta de uno de los demandados, Julio Feliciano, pero sin llegar a derivar de ella la existencia de deberes que tendrían que ser cumplidos por otras personas que no actuaron del mismo modo.

Lo que se pide es el cumplimiento de un contrato de compraventa total de dos inmuebles y el otorgamiento de la correspondiente escritura, y no existiendo prueba clara y terminante de que todos los condueños vendieran, no cabe el pronunciamiento, tanto más cuanto que los inmuebles fueron vendidos a los demandados Bravo sin que tampoco la prueba demuestre de modo claro y terminante que ellos supieran que estaban ya real y debidamente vendidos al demandante.

Bajo esas circunstancias, discutido a virtud de la moción el asunto en su fondo y convencidos de que la apelación no descansa en fundamento alguno meritorio en derecho, la moción debe prosperar, desestimándose en su consecuencia el recurso.

En cuanto a la condena de costas y honorarios de abogado que el apelado solicita invocando el artículo 327 del Código de Enjuiciamiento Civil como quedó enmendado por la Ley núm. 94 de 1937, pág. 239, no obstante la frivolidad del recurso no ejercitaremos nuestra discreción imponiéndola porque en verdad no lo demanda la conducta del

apelado Feliciano. Seguimos en ello el juicio de la propia corte sentenciadora que, como sabemos, declaró sin lugar la demanda pero sin especial condenación de costas.